**PROSKAUER ROSE LLP**
GREGORY W. KNOPP (SBN 237615)
LAURA L. VAUGHN (SBN 329470)
DAVID R. GOBEL (SBN 348117)
gknopp@proskauer.com
lvaughn@proskauer.com
dgobel@proskauer.com
2029 Century Park East, Suite 2400
Los Angeles, CA 90067
Telephone:  310-557-2900
Facsimile:   310-557-2193

Attorneys for Defendants
Tapestry, Inc., Kate Spade LLC and Stuart
Weitzman IP LLC (erroneously sued as Stuart
Weitzman LLC)

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS AYALA, Individually and on behalf of all others similarly situated,<br><br>                       Plaintiff,<br><br>        vs.<br><br>TAPESTRY, INC.; KATE SPADE LLC dba KATE SPADE NEW YORK; STUART WEITZMAN LLC; and DOES 1 through 20, Inclusive,<br><br>                       Defendants. | Case No. **'24CV1052 BAS DEB**<br><br>**CLASS ACTION**<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441, 1446, AND 1453**<br><br>[Declarations of Gregory W. Knopp and Yvie Crespo, Notice of Parties with Financial Interest and Corporate Disclosure Statement, and Civil Cover Sheet filed concurrently]<br><br>Date Action Filed:  May 10, 2024<br><br>*(San Diego County Superior Court, Case No. 37-2024-0021725-CU-OE-CTL)* |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that defendants Tapestry, Inc. ("Tapestry"), Kate Spade LLC dba Kate Spade New York, and Stuart Weitzman IP, LLC (erroneously sued as Stuart Weitzman LLC) (collectively, "Defendants") hereby remove to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446, and 1453. In support thereof, Defendants state as follows:

## BACKGROUND

1.      On May 10, 2024, an action was commenced and is pending against Defendants in the Superior Court of California, County of San Diego, as Case No. 37-2024-00021725-CU-OE-CTL, entitled *Carlos Ayala, Individually, and on behalf of all others similarly situated, v. Tapestry, Inc.; Kate Spade LLC dba Kate Spade New York; Stuart Weitzman LLC; Does 1 - 20, Inclusive.* Declaration of Gregory W. Knopp ("Knopp Decl.") ¶¶ 2-3 & Ex. A. Attached as Exhibits A-E to the Knopp Declaration are copies of all the pleadings filed and served on Defendants in this action. There have been no further proceedings in this action, and no other pleadings have been filed and served upon plaintiff Carlos Ayala or Defendants. *Id.* ¶ 8.

2.      Ayala worked for Tapestry as a store manager. Compl. ¶ 27. He asserts claims under the California Labor Code for failure to pay minimum wages (*id.* ¶¶ 41-46), pay overtime wages (*id.* ¶¶ 47-57), provide meal and rest periods (*id.* ¶¶ 58-73), timely pay all earned wages (*id.* ¶¶ 74-78), pay all wages due upon termination (*id.* ¶¶ 79-84), reimburse business expenses (*id.* ¶¶ 85-93), and provide accurate itemized wage statements (*id.* ¶¶ 94-100). He also asserts claims for unfair competition (*id.* ¶¶ 101-107). Ayala asserts these claims on behalf of a putative class of "[a]ll retail employees of Defendants in the state of California who were classified as exempt from October 1, 2019 to the date of trial." *Id.* ¶ 21.

3.      The Complaint and Summons were served on Tapestry, Inc. and Stuart Weitzman IP, LLC on May 17, 2024 and on Kate Spade LLC on May 22, 2024.

Knopp Decl. ¶¶ 5-6.  This Notice of Removal is timely because it is filed within 30 days of service on any defendant.  28 U.S.C. § 1446(b).

JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

4.     Under 28 U.S.C. § 1441(a), a defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), this Court has original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million (exclusive of costs and interest).  *See* 28 U.S.C. §§ 1332(d)(2), (d)(5), and (d)(6).  These requirements are satisfied here.

5.     Class Action.  CAFA applies to certain "class actions," which the statute defines as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute." 28 U.S.C. § 1332(d)(1)(B).  Ayala filed a "class action complaint" in which he expressly seeks to represent a class and recites the prerequisites for class treatment under California Code of Civil Procedure § 382. Compl. ¶¶ 19-25.  Therefore, CAFA applies.  *See Bodner v. OreckDirect, LLC*, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section 382").

6.     Class Size.  During the relevant period, Tapestry has employed more than 100 individuals as exempt employees at stores in California.  Declaration of Yvie Crespo ("Crespo Decl.") ¶ 10.[1]  Therefore, the putative class exceeds 100 members. *See* Compl. ¶ 21 (defining putative class to include all "[a]ll retail employees of Defendants in the state of California who were classified as exempt from October 1, 2019 to the date of trial.").

---

[1] A defendant may make the requisite showing by setting forth facts in the notice of removal or by affidavit.  *Lamke v. Sunstate Equip. Co.*, 319 F. Supp. 2d 1029, 1032 (N.D. Cal. 2004).

DEFENDANTS' NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441, 1446, AND 1453

7.      <u>Diversity of Citizenship.</u>  "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).  Minimal diversity exists if any class member is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2).

8.      Ayala is a citizen of the state of California.  Compl. ¶ 12 ("Plaintiff is a citizen of California.").  During his employment with Tapestry, Ayala worked at a store in Alpine, California and kept an Escondido, California home address on file with the company, both of which demonstrate his California citizenship.  Crespo Decl. ¶ 12; *see Lam Rsch. Corp. v. Deshmukh*, 157 F. App'x 26, 27 (9th Cir. 2005) (defendant who had lived and worked for plaintiff in Washington was presumptively a Washington citizen, despite his claim that he had changed his domicile from Washington to California); *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012) (residential address provided by employee to employer is prima facie evidence of state citizenship).  Further, Ayala seeks to represent a class of individuals who work for Tapestry in California.  Compl. ¶ 21.  This putative class logically includes other California citizens as well.

9.      Defendants are not citizens of the state of California.  Rather, Tapestry is a citizen of Maryland and New York, and Kate Spade LLC and Stuart Weitzman IP, LLC are citizens of Delaware and New York.  "[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State  . . . where it has its principal place of business[.]"  28 U.S.C. § 1332(c)(1).  Similarly, the citizenship of a limited liability company (LLC) is determined by "the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C.A. § 1332(d)(10); *Hernandez v. Pure Health Rsch.*, 2023 WL 7029213 (S.D. Cal. Oct. 25, 2023); *Jack v. Ring LLC*, 553 F. Supp. 3d 711 (N.D. Cal. 2021).

10.     Defendants were not incorporated in California.  Rather, Tapestry was organized and incorporated under the laws of the state of Maryland.  Crespo Decl. ¶ 2.

DEFENDANTS' NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441, 1446, AND 1453

1  Likewise, Kate Spade LLC and Stuart Weitzman IP, LLC were organized under the

2  laws of Delaware.  *Id.* ¶ 8.

3       11.    Nor is California the state in which Defendants maintain their principal

4  places of business.  A company's principal place of business is determined under the

5  "nerve center" test.  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).  Under this

6  test, the principal place of business is the state where the company's "officers direct,

7  control, and coordinate [its] activities."  *Id*.  Further, a company's nerve center

8  "should normally be the place where [it] maintains its headquarters."  *Id*.  Relevant

9  factors include where executives reside and maintain offices, where administrative

10 and financial offices are located, where the board of directors meets, where income

11 tax returns are filed, and where day-to-day control over the company is executed.  *See*,

12 *e.g.*, *Tomblin v. XLNT Veterinary Care, Inc.*, 2010 WL 2757311, at *4 (S.D. Cal.

13 July 12, 2010).

14      12.    Under these standards, Defendants' principal places of business are all in

15 New York.  Tapestry's executive and administrative operations are centrally managed

16 from its headquarters in New York.  The executive officers of Tapestry, including the

17 Chief Executive Officer, Chief Financial Officer & Chief Operating Officer, Chief

18 People Officer, General Counsel, CEO & Brand President, Coach and CEO & Brand

19 President, kate spade new york, maintain their offices at Tapestry's headquarters in

20 New York.  Crespo Decl. ¶ 3.  From its New York headquarters, Tapestry makes and

21 implements company-wide operating, distribution, financial, employee relations,

22 marketing, development, customer care, accounting, income tax, treasury, and legal

23 policy decisions.  *Id*. ¶ 4. Further, many meetings of Tapestry's Board of Directors

24 and stockholders take place in New York, its financial records are maintained there.

25 *Id.* ¶¶ 5-6.  Kate Spade LLC and Stuart Weitzman IP, LLC, are wholly-owned

26 subsidiaries of Tapestry organized and incorporated under the laws of the state of

27 Delaware.  They do not have separate executive officers or headquarters from

28 Tapestry.  *Id.* ¶ 8.

13.     Accordingly, this action involves citizens of different states—Ayala who is a citizen of California (and seeks to represent a class including California citizens), and Defendants, which are citizens of Maryland, Delaware, and New York.

14.     <u>Amount in Controversy.</u>  Without conceding liability for any claims alleged or that Ayala can properly represent the putative class he defined, Tapestry avers, for purposes of this Notice only, that Ayala's claims as pled place more than $5 million in controversy.  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial . . . because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.).

Removal is proper if, based on the allegations of the complaint and the notice of removal, it is more likely than not that the amount in controversy exceeds $5 million.  *Rodriguez v. AT&T Mobility Servs., Inc*., 728 F.3d 975, 981 (9th Cir. 2013) (overturning precedent requiring proof of amount in controversy to a "legal certainty" in some circumstances).  This standard is easily satisfied here.

15.     *Overtime Claim*.  For his Second Cause of Action, Ayala alleges that, "due to Defendants classifying Plaintiff and Class Members as exempt," Defendants failed to pay overtime wages due under California law.  Compl. ¶ 4; *see also id.* ¶¶ 47-57.  Ayala seeks damages of 1.5 times the regular rate of pay for each hour worked past eight in a day or 40 in a week.  *See* Cal. Lab. Code. § 510 ("any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek ... shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.").  Ayala alleges "Plaintiff and Class Members *frequently* worked shifts of eight hours or more . . ." ¶ 32 (emphasis added).  He further alleges "Defendants had a *consistent policy* of violating" the law "by . . . failing to pay overtime wages for all hours worked" and that such violations were "*systematic*."

Compl. ¶¶ 5-6 (emphasis added).  Given these allegations, it is reasonable to assume Ayala seeks damages for at least two hours of overtime per week.  *See Marano v. Liberty Mut. Grp., Inc.*, 2021 WL 129930, at *2 (C.D. Cal. Jan. 14, 2021) (assuming four hours of overtime was reasonable where plaintiff alleged "consistent policy" of violations); *Torrez v. Freedom Mortge., Corp.*, 2017 WL 2713400, at *4 (C.D. Cal. June 22, 2017) (assuming three hours of overtime was reasonable where plaintiff alleged "pattern and practice" of denying overtime pay); *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *3 (C.D. Cal. Oct. 1, 2019) (assuming two hours of unpaid overtime per week was reasonable based on allegation of "policy and/or practice" of denying overtime); *Cavada v. Inter-Cont'l Hotels Group*, Inc., 2019 WL 5677846, at *5 (S.D. Cal. Nov. 1, 2019) (assuming two hours of unpaid overtime was reasonable based on allegations of "systemic scheme" to deny payment of overtime).  The putative class members collectively have worked approximately 13,000 weeks in nonexempt, full-time positions in California during the relevant period[2] and earned approximately $36 per hour.  Crespo Decl. ¶ 10 (at least 60 exempt store employees in California at a time) and *id.* (typical annual salary of more than $75,000).[3]  Therefore, conservatively assuming two unpaid overtime hours per week, the potential damages are approximately $1.4 million (1.5 × $36 × 2 hours × 13,000 weeks).

16.    *Meal and Rest Break Claims*.  For his Third and Fourth Causes of Action, Ayala alleges Defendants failed to provide meal breaks to putative class members who worked more than five hours in a shift (Compl. ¶¶ 58-66) and failed to provide

---

[2] A four-year statute of limitations applies to claims brought pursuant to Section 17200 of the Business and Professions Code, including Ayala's overtime and break claims.  *See Tomlinson v. Indymac Bank, F.S.B.,* 359 F. Supp. 2d 891, 898 (C.D. Cal. 2005).  Alaya alleges statutory tolling pursuant to Emergency Rule 9 extends the limitations period to October 1, 2019.  Compl. ¶ 21, n.1.

[3] An annual salary of $75,000 translates to an hourly rate of approximately $36 ($75,000 / 52 weeks / 40 hours).  *See* Cal. Lab. Code. § 515(d)(2) ("Payment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours[.]"); Cal. Dep't of Indus. Rels., Div. Lab. Standards Enf't, Opinion Letter Re: Lab. Code § 226 – Semi-Monthly Pay Periods for Non-Exempt Salaried Employees (May 17, 2002).

rest breaks when they worked more than four hours in a shift (Compl. ¶¶ 67-73).

Ayala seeks a premium equal to one hour of pay for each shift in which a putative

class member did not receive a complaint break. *See* Compl. ¶¶ 65, 72; Cal. Lab.

Code § 226.7(c). Ayala claims meal and rest break violations occurred "often" due to

a "systematic" and "consistent policy." *See* Compl. ¶¶ 5-6 (alleging "consistent

policy of . . . failing to provide lawful meal periods or compensation in lieu thereof"

and "failing to authorize or permit lawful rest breaks or provide compensation in lieu

thereof"); *id.* ¶ 33 ("Plaintiff and Class Members would also often be required to work

through meal periods."); ¶ 35 ("Defendants would often require Plaintiff and Class

Members to work through their rest periods."). Therefore, it is reasonable to assume

Ayala seeks damages for both rest break and meal break violations on at least half the

shifts. *E.g.*, *Sanchez v. Abbott Labs.*, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30,

2021) (reasonable to assume three meal period and two rest period violations per

week based on complaint's allegation of "pattern and practice" of denying breaks);

*Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (reasonable to

assume three missed meal periods and three rest periods per week where complaint

"offered no guidance as to the frequency of the alleged violations, only that Defendant

had 'a policy and practice' of meal and rest period violations"); *Oda v. Gucci Am.,*

*Inc.*, 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7, 2015) (reasonable to assume putative

class members missed 2.5 meal periods and 2.5 rest periods per week based on

allegations that class members "sometimes" did not receive all meal periods and

defendant "maintained a policy or practice" of not compensating employees for

missed breaks). As explained, the putative class members collectively worked

roughly 13,000 weeks during the relevant period, typically worked five days per

week, and earned approximately $36 per hour. Crespo Decl. ¶¶ 10-11. Therefore,

assuming violations on half the shifts, each break claim places roughly $1.1 million in

controversy ($36 × 2.5 violations per week × 13,000 weeks). Together, the two break

claims place more than $2.2 million at issue.

17.    *Late Payment Claim*.  For his Fifth Cause of Action, Ayala claims Defendants violated Labor Code Section 204 by failing to pay all earned wages on time due to the alleged overtime and break violations.  *See* Compl. ¶ 76-77.  Ayala can recover more than $200 for each "willful" violation.  Cal. Lab. Code § 210(a); Compl. ¶¶ 6, 40, 55, 78 (alleging "willful" violations pursuant to "consistent policy" of "failing to timely pay all earned wages").  Because Ayala claims each of the underlying violations occurred pursuant to a "consistent policy," it is reasonable to assume each pay period included an alleged late payment.  *See Mariscal v. Ariz. Tile, LLC*, 2021 WL 1400892, at *4 (C.D. Cal. Apr. 14, 2021) (where allegations of Section 204 violations "were not limited in any manner, it is reasonable to assume, for purposes of the jurisdictional analysis, that each of the wage statements proffered by [Defendant] violates Section 204").  The putative class members collectively worked approximately 1,500 pay periods since May 10, 2023.  Crespo Decl. ¶ 13 (biweekly pay periods for more than 60 employees); *Singer v. Becton, Dickinson & Co.*, 2008 WL 2899825, at *3 (S.D. Cal. July 25, 2008) (one-year statute of limitations applies). Therefore, this claim places at least $300,000 in controversy (1,500 pay periods × $200 penalty).

18.    *Final Wages Claim*.  For his Sixth Cause of Action, Ayala claims that, by failing to pay overtime wages and break premiums allegedly due, Defendants also failed to pay all wages due at the end of putative class members' employment. Compl. ¶¶ 79-84.  If an employer willfully fails to pay final wages, the employee may recover penalties equal to their daily rate of pay for a period of up to 30 days.  Cal. Lab. Code § 203; *see* Compl. ¶ 81 (alleging Defendants "willfully failed to pay" final wages).  According to the complaint, every former employee who allegedly experienced at least one break violation or worked any unpaid time may recover this penalty.  Compl. ¶ 84.  Because the complaint alleges "systematic" and "consistent" policies of failing to pay various underlying amounts, it is reasonable to assume every former employee seeks a 30-day penalty.  Compl ¶¶  5-6; *see Altamirano v. Shaw*

*Indus., Inc.,* 2013 WL 2950600, at \*12 (N.D. Cal. June 14, 2013) (where plaintiff alleges pervasive violations, "it is reasonable to assume that each employee leaving employment would [be owed Section 203 penalties]"); *see also Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (in estimating amount in controversy, court may assume maximum penalty consistent with plaintiff's allegations).  During the three-year period relevant to this claim, approximately 25 putative class members separated from employment with Defendants.  Crespo Decl. ¶ 10; *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395-96 (2010) (three-year statute of limitations for Section 203 claims).  The putative class members typically earned more than \$280 per day.  Crespo Decl. ¶¶ 10-11 (\$75,000 annual salary divided by 52 weeks divided by five days).  Therefore, a typical 30-day penalty is approximately \$8,400.  *See Perez v. WinnCompanies, Inc.*, 2014 WL 5823064, at \*7 (E.D. Cal. Nov. 10, 2014) ("the full thirty days of waiting time penalties is the proper measure and may be relied upon to calculate the amount in controversy" where plaintiff alleges "the alleged unpaid wages [were] owed even now to Plaintiff."); *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1125-26 (C.D. Cal. 2010) (similar).  Therefore, the total penalties for the eligible class member are more than \$200,000.

19.   *Wage Statement Claim*.  For his Eighth Cause of Action, Ayala claims Defendants provided inaccurate wage statements in violation of Labor Code Section 226 by failing to record the hours and pay associated with the overtime allegedly worked and the break premiums alleged earned.  Compl. ¶¶ 39, 94-100.  A plaintiff can recover penalties of \$50 for the initial pay period in which an employee experienced a violation and \$100 for each subsequent pay period in which the employee experienced a violation, up to a maximum of \$4,000.  Cal. Lab. Code § 226(e)(1).  Ayala alleges such violations were "systematic" and occurred pursuant to "a consistent policy of . . . failing to provide accurate itemized wage statements" (Compl. ¶¶ 5-6), so it is reasonable to assume each wage statement issued during the relevant period is a potential violation.  *E.g.*, *Tajonar v. Echosphere, L.L.C.*, 2015 WL

9

4064642, at *4 (S.D. Cal. July 2, 2015) (assuming 100 percent violation rate where plaintiff alleged "policy and/or practice and/or direction" of violating Section 226); *Fong v. Regis Corp.*, 2014 WL 26996, at *6 (N.D. Cal. Jan. 2, 2014) ("Based on [the plaintiff's] broad allegations" that the defendant "knowingly and intentionally provided its employees with inaccurate wage statements," reasonable to assume "that each wage statement . . . may have violated § 226."); *Oda,* 2015 WL 93335, at *4 (assuming maximum wage statement penalties per putative class member). The putative class members collectively worked approximately 1,500 pay periods since May 10, 2023. Crespo Decl. ¶ 13; Cal. Civ. Proc. Code § 340 (one-year statute of limitations). Therefore, this claim places more than $75,000 in controversy (1,500 violations at $50 rate for "initial" violations).

20.  *Attorneys' Fees*. Ayala seeks attorneys' fees in connection with his class claims. Compl. ¶¶ 7, 25(c), 45, 57, 77, 88, 92, 93 ,98, 100, 107, Prayer for Relief ¶ 9. "Section 1332(a)'s amount-in-controversy requirement . . . includes attorneys' fees." *Guglielmino v. McKee Foods Corp.*, 506 F.3d at 696, 700 (9th Cir. 2007). The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees" in class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018) (future attorneys' fees may be included in the amount in controversy). Ayala's counsel likely seeks attorneys' fees of at least 25 percent of the potential class recovery, as they have done in similar actions. *See Billups-Larkin v. Aramark Services, Inc.*, 2023 WL 4600409, at *1 (N.D. Cal. July 17, 2023) (in class action settlement, Ayala's attorneys sought 35 percent of settlement amount in fees); *Rivera v. W. Express Inc.*, 2020 WL 8028249, at *4 (C.D. Cal. Nov. 20, 2020) (Ayala's attorneys sought 30 percent of the settlement amount in fees). Therefore, because the potential damages and penalties are nearly $4.2 million when combined, the attorneys' fees place more than an additional $1 million in controversy. *See Vallejo v. Sterigenics U.S.*, LLC, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (applying the 25 percent benchmark rate for

attorneys' fees in controversy because "[i]n the Court's experience, Plaintiff brings a typical California wage and hour case in which courts in this Circuit would likely apply the 25% benchmark rate"); *Mariscal v. Ariz. Tile, LLC*, 2021 WL 1400892, at *5 (C.D. Cal. Apr. 14, 2021) (accounting for attorneys' fees by using the 25 percent benchmark because "the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction"); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("In this Court's experience, '[w]hen including attorneys' fees within the amount-in-controversy for jurisdictional purposes, courts in this circuit consistently use the 25% benchmark rate,' especially in wage and hour class actions like this one . . . the 25% benchmark provides a non-speculative guidepost for assessing jurisdiction." (citations omitted)).

21. As detailed above, CAFA's amount in controversy requirement is satisfied, without even considering the claims for minimum wage violations and failure to reimburse business expenses. *E.g.*, *Guglielmino*, 506 F.3d 696, 700-01 (remand denied under preponderance of the evidence standard where defendant's conservative estimates exceeded the requisite amount).

22. There are no grounds that would justify this Court declining to exercise its jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or that would require it to decline to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4).

## VENUE

23. The United States District Court for the Southern District of California is the judicial district embracing the place where this action was filed by Ayala and is therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

DEFENDANTS' NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441, 1446, AND 1453

1    WHEREFORE, Defendants request that the above action now pending in the

2    Superior Court of California, County of San Diego, be removed to this Court.

3

4    Dated: June 17, 2024                    PROSKAUER ROSE LLP

5

6                                        By:    _s/ Gregory W. Knopp_
                                                Gregory W. Knopp
7                                               Attorneys for Defendants

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. §§ 1332(d)(2), 1441, 1446, AND 1453