# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

CARLOS AYALA,

Plaintiff,

v.

TAPESTRY, INC., *et al.*,

Defendants.

Case No. 24-cv-1052-BAS-BJW

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**(ECF No. 34)**

Presently before the Court is Defendants' motion for partial summary judgment. (ECF No. 34.) Plaintiff opposed the motion. (ECF No. 37.) Defendants replied. (ECF No. 38.) Also pending before the Court is Plaintiff's motion for class certification. (ECF No. 39.) Before deciding the present motion, the Court had the benefit of oral argument. (ECF No. 48.) Upon reviewing the arguments, the Court **GRANTS** Defendants' motion for summary judgment. (ECF No. 34.)

24cv1052

## I.     BACKGROUND

Plaintiff started work for the fashion brand Coach as an "associate store manager" in October 2015. (Ayala Dep. 18:12–13, 35:22–24, ECF No. 34-1, Ex. A.) In December 2019, he was promoted to "store manager." (*Id.* 38:13–18.) In that capacity, Plaintiff was the highest-ranking employee on site. (*Id.* 68:25–69:3) For some years during Plaintiff's tenure, the store received an annual revenue of over six million dollars. (*Id.* 50:7–18.)

Plaintiff earned a fixed biweekly salary. (*Id.* 60:7–12). He made around $80,000.00 per year. (*Id.* 60:17–22.) In addition, Plaintiff received annual and monthly bonuses. (*Id.* 60:23–61:19). Plaintiff left Coach in June 2023. (*Id.* 52:4–9.)

In May 2024, Plaintiff filed nine California Labor Code claims in state court. (ECF No. 1-2, Ex. A.) Defendants removed the action to federal court, invoking diversity jurisdiction. (ECF No. 1.) Plaintiff voluntarily dismissed the claims regarding failure to pay minimum wages and unfair competition. (Opp'n 18:14–18, ECF No. 37.) Thus, the remaining California law claims include failure to: (1) pay overtime wages; (2) provide meal breaks; (3) provide rest breaks; (4) timely pay all earned wages; (5) pay all wages due upon termination; (6) reimburse business expenses; and (7) provide accurate itemized wage statements.

Except for the reimbursement of business expenses claim, Defendants move for summary judgment as to all claims on their affirmative defense, stating Plaintiff is exempt from the California Labor Code as an "executive" employee. (Mot. 1:8–9, ECF No. 34.) In the alternative, Defendants move for summary judgment on some of Plaintiff's causes of action. (*Id.* 1:22–23.) In response, Plaintiff counters that Defendants mischaracterized him as exempt. (Opp'n 1:4–8.) And Plaintiff defends the viability of his claims. (*Id.* 2:21–22.)

The parties submitted a brief statement of undisputed facts. The parties agree on the following: (1) Plaintiff worked as the store manager of the Coach outlet store in Alpine, California, from December 2019 to June 2023; (2) Plaintiff's resume upon leaving Tapestry stated that he "set and communicated goals for the team, tracked store's performance at all times and adjusted according to trend," "demonstrated strong business acumen," and

24cv1052

"strategically forecasted, planned, and budgeted to the needs of the business (i.e. Payrolls, staffing, scheduling, etc.)" (cleaned up); (3) Plaintiff worked five days per week; (4) Plaintiff spent one hour serving as a Coach "brand ambassador" at various charity events, local events, and mall initiatives; and (5) Plaintiff spent twenty to thirty minutes per week "shopping a competitor," meaning Plaintiff visited other retailers to assess their sales strategies. (ECF No. 42.)

## II.    ANALYSIS

A court's role at summary judgment "is to isolate and dispose of factually unsupported claims or defenses" so that they are "prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). A court thus appropriately grants summary judgment if the moving party shows that there is no genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A "material" fact "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986). And a "genuine" issue of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

At summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The Court steers clear of "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts." *Id.* And "[t]he Court need consider only the cited materials" from the record. Fed. R. Civ. P. 56(c)(3).

The burden-shifting scheme defines the motion for summary judgment. *See* Fed. R. Civ. P. 56(c). The party that moves for summary judgment initially carries the burden. *See Celotex*, 477 U.S. at 325; *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "Where the party moving for summary judgment has the burden of persuasion at trial, such as where the moving party seeks summary judgment on its own claims or defenses, the moving party must establish 'beyond controversy every essential element of its' [claim]." *Geer v. Siemens Med. Sols. USA, Inc.*, No. 20-cv-05613-SVK,

24cv1052

2021 WL 4979426, at *5 (N.D. Cal. Sept. 24, 2021) (citing *So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003)). The nonmovant can defeat summary judgment by showing a triable issue remains for at least one element of the affirmative defense. *See So. Cal. Gas Co.*, 336 F.3d at 888. The nonmovant cannot satisfy his burden by alluding to "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

A court may decide a motion for summary judgment before addressing the issue of class certification. *See Wright v. Schock*, 742 F.2d 541, 543–44 (9th Cir. 1984).

### A.     The "Executive" Exemption

The California Labor Code protects "non-exempt" employees through, for example, wage and hour as well as meal and rest break regulations. However, the California Legislature carved out certain employees from the California Labor Code's reach. These employees are considered "exempt." One such category of exempt employees are "executive" employees in the mercantile industry under Cal. Code Regs., tit. 8, § 11070(1)(A)(1). Defendants categorized Plaintiff's position as exempt, but Plaintiff maintains that he was misclassified and therefore the California Labor Code's protections should apply. (Mot. 1:8–9; Opp'n 3:23.) One identifies an exempt "executive" through the following characteristics:

> (a) Whose duties and responsibilities involve the management of the enterprise in which they are employed or of a customarily recognized department or subdivision thereof; and
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
> (d) Who customarily and regularly exercises discretion and independent judgment; and
> (e) Who is primarily engaged in duties which meet the test of the exemption. […]

24cv1052

(f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment. Full-time employment is defined in Labor Code Section 515(c) as 40 hours per week.

Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(a)–(f).

Here, Defendants bear the burden of satisfying all six elements of the "executive" exemption. *See Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 795–95 (1999) ("[T]he assertion of an exemption from the [California Labor Code] is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption."). In his opposition brief, Plaintiff contests only three of the six exemption requirements.[1] (Opp'n 7:1–2.) Thus, the Court addresses the three disputed elements.

### 1.    Whether Plaintiff Could Hire or Fire Other Employees

An exempt executive "has the authority to hire or fire other employees" or, even if he does not directly make employment decisions, his suggestions and recommendations receive "particular weight." Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(c).

Plaintiff's deposition testimony admits that he could hire employees. Plaintiff attests: "Q: So, if you were hiring a sales associate, for example, did you need approval? A: No. Q: And did you in fact hire sales associates without approval? A: Yes. Q: Do you recall about how many? You can estimate. A: Depending on the season it could range from between five and ten." (Ayala Dep. 116:11–20.)

In response, Plaintiff argues that because he could not "fire" employees, Defendants did not satisfy their burden. But this argument lacks support in the statutory text and the case law. The statute relies on the employee's authority to "hire or fire other employees," using the expansive conjunction "or." Plaintiff cites no case law supporting a different reading of the statute.[2]

---

[1] Specifically, Plaintiff concedes that he managed the enterprise, directed the work of at least two employees, and earned a salary greater than twice the minimum wage. (Opp'n 7:1–2.)

[2] Instead, Plaintiff focuses on a company policy that suggests a store manager has to discuss employment decisions with the district manager or a human resources partner before taking action. (Opp'n 14:0–12; Davis Dep. 34:18–20, ECF No. 37-1, Ex. 1.) As Misty Davis, a district manager, explained in her deposition, however, this policy indicates a preference for managers like Plaintiff to consult or partner

24cv1052

In any case, Plaintiff's recommendations and suggestions received considerable weight. In a discussion about the hiring of other management level employees, Plaintiff confirms, "Q: Did the person you recommended for hire end up being hired – A: Yes. Q: – by the company? Do you ever recall a circumstance where you recommended hiring somebody and your recommendation was rejected? A: Not necessarily rejected but a push back. Q: And what ultimately became of the candidate? A: Hired." (*Id*. 117:25–118:9.)

Plaintiff further challenges whether any given "class member" exercised such hiring power. But, before class certification, the Court is only concerned with whether named Plaintiff had the authority to hire or fire other employees. *See, e.g.*, *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."). Here, Plaintiff did. Accordingly, the Court grants Defendants motion for summary judgment on this element.

### 2. Whether Plaintiff Exercised Discretion and Independent Judgment

An exempt executive "customarily and regularly exercises discretion and independent judgment." Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(d). The California Court of Appeal notes the provision requires the "power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance," clarifying that "[t]he requirement that discretion be exercised with respect to 'matters of significance' means the decision being made must be relevant to something consequential and not merely trivial." *United Parcel Serv. Wage & Hour Cases*, 190 Cal. App. 4th 1001, 1024 (2010).

---

before making employment decisions. (Davis Dep. 34:25–35:18.) Davis responds: "Q: Can a store manager make a decision, an employment decision without speaking to the [district manager] and [human resources]? A: They have the ability to, absolutely." (*Id*. 34:10–13.) Notwithstanding the employer's preference, the policy does not negate the fact that Plaintiff hired employees. Plaintiff did in fact hire employees and thereby satisfied this element. And anyways, the uncontested evidence shows Plaintiff's recommendations received considerable weight.

24cv1052

Plaintiff affirms this authority, stating: "I treated that store [] – like it was my own business, based upon my responsibilities as a leader, as a manager, with no contact." (Ayala Dep. 50:2–4.) In other parts of his deposition, Plaintiff verifies a lack of general oversight, admitting: "Q: You were just left to your own devices to figure out how to make that store profitable? A: Yes. Q: Did you manage to do that? A: Yes. Q: How did you [] manage to do that without any support from a district manager? A: Business owner mindset." (*Id.* 49:11–23.) Plaintiff further confirms responsibility of maintaining a store that generated around six million in sales: "Q: How would you describe your job duties as the store manager of the [Coach] store? A: Full[y] responsible for all areas of the business needs, including sales generations." (*Id.* 71:25–72:3.) And elsewhere succinctly admits: Q: "Everything that happens in the store was your responsibility? A: Yes." (*Id.* 72:14–17.)

Defendants illustrate that Plaintiff's discretionary decisions move beyond triviality, including: developing sales strategies to ensure the store operated profitably, evaluating the performance of all team members, addressing customer issues, setting and adjusting the schedule, and providing training and feedback. (Mot. 7:1–8:23.) Moreover, the elements of the exemption analysis support each other. Plaintiff's concession that he directed the work of two or more employees, for example, supports Plaintiff's exercise of independent judgment; Plaintiff affirms, "Q: All the employees in the store reported to you; correct? A: Yes. Q: You directed their work every day? A: Yes." (Ayala Dep. 70:4–10); *see Wellons v. PNS Stores, Inc.*, No. 18-cv-02913-RSH-DEB, 2022 WL 16902199, at *23 (S.D. Cal. Nov. 10, 2022) ("Although the six requirements are distinct and each one must be satisfied for the exemption defense to apply, there is also some overlap between those requirements.").

However, Plaintiff claims that he does not satisfy this element for various reasons. Plaintiff cites a Ninth Circuit case along with several pieces of statutory text, but these sources of authority pertain to the exemption for "administrative" employees, which is not at issue here. *McKeen-Chaplin v. Provident Savings Bank, FSBI*, 862 F.3d 847 (9th Cir.

24cv1052

2017); 29 C.F.R. 541.202. To the extent authority on the "administrative" exemption is relevant, the Court fails to see the connection in Plaintiff's brief.

Plaintiff also argues that the allegedly "exempt" and "non-exempt" employees share many duties, thus there should be no legal difference between them. (Opp'n 11:23–25.) But overlap in job duties and the exempt employee's additional responsibilities can coexist. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104, 1115 (9th Cir. 2001) ("[T]hat the Baldwins performed some of the same tasks as their subordinates is not in and of itself evidence that the Baldwins do not qualify for the exemption."). Relatedly, Plaintiff argues that he should not be considered exempt because he clocks in and out of work and schedules meal breaks like non-exempt employees. (Opp'n 12:24–13:1.) However, needing to clock in and out of work does not automatically make an employee non-exempt. *Baldwin*, 266 F.3d at 1115.

Finally, Plaintiff's brief attempts to dispute discretion and independent judgment by listing various powers that Plaintiff lacked within the corporation, for example, Plaintiff had no legal ownership in the company, (Opp'n 13:8–9), and no involvement in planning the company's long- or short-term business goals, (Opp'n 13:15–16). But the Court fails to see how these powers create a genuine issue of fact. The Court's analysis turns on whether Plaintiff exercised discretion and independent judgment in the duties assigned to and performed by him. *See United Parcel*, 190 Cal. App. 4th at 1021 ("There is no requirement that in order to be properly classified, an executive must carry out every conceivable function that can be classified as an exempt duty.") Accordingly, the Court grants Defendants' motion for summary judgment on this element.

### 3. Whether Plaintiff Primarily Engaged in Exempt Duties

An exempt executive must "primarily engage[] in duties which meet the test of the exemption." Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(e). The statutory text provides several key definitions. To say an employee "primarily engaged" in exempt duties means the employee spent "more than one-half the employee's work time" on exempt tasks. Cal. Code. Regs., tit. 8, § 11070(2)(k). To define "exempt," the court relies on the Fair Labor

24cv1052

Standards Act,[3] and the California Supreme Court in *Heyen* listed managerial duties "easily recognized" as exempt under that statute:

> Interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing their work; maintaining their production or sales records for use in supervision or control; appraising their productivity and efficiency for the purpose of recommending promotions or other changes in their status; handling their complaints and grievances and disciplining them when necessary; planning the work; determining the techniques to be used; apportioning the work among the workers; determining the type of materials, supplies, machinery or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety of the men and the property.

*Heyen v. Safeway Inc.*, 216 Cal. App. 4th 795, 819 (2013) (citing 29 C.F.R. § 541.102(b)).

The court considers "exempt" activities "directly and closely related to" and "properly viewed as means for carrying out" such managerial tasks. Cal. Code. Regs., tit. 8, § 11070 (1)(A)(1)(e).[4] In regard to process, the court examines the "work actually performed by the employee during the course of the workweek" and "the amount of time the employee spends on such work," along with "the employer's realistic expectations and the realistic requirements of the job." *Id.*[5]

Using Plaintiff's deposition testimony and employment records, Defendants calculate a 41.5-hour workweek, and argue Plaintiff spent 24.5 hours on exempt duties,

---

[3] "The activities constituting exempt work and non-exempt work shall be construed in the same manner as such items are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.102, 541.104-111, and 541.115-116." Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(e).

[4] "Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(e).

[5] "The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." Cal. Code Regs., tit. 8, § 11070(1)(A)(1)(e).

24cv1052

approximately 60% of the time.[6] (Mot. 13:9–15.) Plaintiff's exempt duties included: administrative tasks in the office, managerial tasks outside the store, communications with the district manager after business hours, and management of the sales floor operations. (*Id.* 10:3–7.) In response to Defendants' calculation that Plaintiff spent greater than 51% of a workweek on "exempt" duties, Plaintiff raises six objections, arguing either the inaccuracy of the hours, or the erroneous categorization of tasks.

### a.    Whether to incorporate on-duty meal periods

Defendants calculate an average of 7.98 hours in-store a day. (Mot. 9:20–21.) Plaintiff objects to this calculation because Defendants excluded "on-duty meal breaks." (Opp'n 7:16–18.) And Plaintiff seeks to include these on-duty meal breaks into the total hours worked. (*Id.*) But Defendants highlight that on-duty meal breaks were a "very rare" occasion. (Ayala Dep. 163:17–18.) The store experienced staff shortage during its post-pandemic opening, so that once or twice a month, no secondary manager could cover Plaintiff's lunch break. (*Id.* 164:1–7.) Plaintiff otherwise confirms that he took meal breaks at the scheduled time, stating: "Q: Okay. So with the exception of a period of time when once or twice a month you were unable to take a meal break, you've always been able to take the meal breaks consistent with the company's policy? A: Yes." (*Id.* 164:8–13).

Defendants also stress that the Court's analysis should focus on the "typical" workweek. *Batze v. Safeway, Inc.*, 10 Cal. App. 5th 440, 478–49 (2017), as modified on denial of reh'g (May 3, 2017) ("Although the significant period for determining exempt status is the work week, and employees exempt or non-exempt status can vary on a week by week basis, this rule in no way suggests that the trier of fact may not make reasonable inferences about a party's activities during the relevant period based on his or her activities

---

[6] Using Plaintiff's testimony and time records, Defendants calculate around eight-hour shifts on average for five days per week. (Mot. 9:15–17). Defendants also include 1.5 hours per week working from home. (*Id.* 9:21–22.) Thus, the typical weekly hours, according to Defendants, comes to 41.5 hours. (*Id.* 9:22–23.)

24cv1052

in earlier and later periods, particularly where there is nothing to suggest the employee's duties and responsibilities changed significantly.") (citation modified).

But the language from *Batze* does not provide a sufficient basis on which the Court can hold as a matter of law that these "on-duty meal periods" should be excluded from the "workweek." *See, e.g., Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 948 (9th Cir. 2011) (noting that "[u]nder California law, the Court must determine whether any given class members . . . spend more than 51% of their time on managerial tasks *in any given workweek*") (citing *Dunbar v. Albertson's, Inc.*, 141 Cal.App.4th 1422, 1426 (2006) (emphasis added)). Accordingly, Defendants fail to meet their burden to show they are entitled to judgment as a matter of law on this basis.

### b.    The calculation of communications with the district manager

Defendants' calculation includes Plaintiff's after-business-hours, work-related communications with the district manager. (Ayala Dep. 123:15–124:21.) Defendants calculated these out-of-store hours to be one hour and thirty minutes per week. (Mot. 9:21–24.) In his deposition, Plaintiff stated: "Q: How frequently did you respond to emails or text messages while not working at the store? A: Quite frequently. Q: Was that a daily event? A: Probably every other day. Q: And typically, every other day, how long would you spend responding to emails and text messages? A: Depending on the urgency of the email or text. It can range from 15 minutes to 45 minutes if I needed to gather information." (Ayala Dep. 123:15–25.)

Defendants construe every other day to be three days per week and use the midpoint range of thirty minutes for the calculation. (Mot. 9:21–24.) Plaintiff claims these outside-of-store hours were improperly calculated. (Opp'n 8:3–4.)

Based on the given range of fifteen to forty-five minutes, the Court finds a triable issue of material fact regarding the calculation of after-business-hours' communications with the district manager.

24cv1052

### c.   The calculation of communications with the store associates

One of Plaintiff's responsibilities was to spend time reviewing sales goals with the staff. (Ayala Dep. 134:13–22.) Defendants total one hour and forty minutes per week for in-store sales goals discussions with store associates. (Mot. 10:17–18.) When describing his communications with store associates, Plaintiff states: "Q: How much time would you spend reviewing the sales goals with the staff? A: For each associate, five minutes. […] Q: So that's about 25 minutes a day reviewing sales goals with the team? A: Yes. Some came in at the same time so it was all at once." (Ayala Dep. 134:23–135:7.)

Plaintiff's opposition highlights to the Court that this time could be construed as combined; therefore, the time spent on reviewing sales goals with staff could total approximately 20 minutes per week, and not one hour and forty minutes. (Opp'n 8:17–18.) In response, Defendants state that although Plaintiff suggested these meetings can occur "at once," he did not state that the joint nature shortened the meeting. Reading the deposition in the light most favorable to Plaintiff, however, makes Defendants' argument unpersuasive. Accordingly, the Court finds a triable issue of material fact regarding the calculation of communications with store associates.

### d.   The calculation of other store communications

Plaintiff's duties included monitoring and responding to store communications, and Defendants calculate one hour per week on such communications. (Mot. 10:19–20.) But Plaintiff highlights that the deposition testimony suggests all managers took responsibility for the communications; Plaintiff states, "Q: Did you spend time each day monitoring and responding to communications to the store? A: Yes Q: In a typical day, how much time did you spend monitoring and responding to communications to the store? A: 15 to 20 minutes, if we noticed it. Q: What do you mean by that? A: Because the emails were coming into the store's computer and that was in the stock room. Q: And you were responsible for checking the communications to the store? A: All managers were.    Q: Specifically, I am asking about you. So is it fair to say that you would spend time each day monitoring

24cv1052

store communications? A: Yes. Because they would come to my phone." (Ayala Dep. 140:15–141:7.)

Even though Plaintiff responded with the inclusive "we," Defendants note that the question's phrasing specified *Plaintiff's* typical day. But reading the evidence in the light most favorable to Plaintiff, the Court finds Defendants' argument unpersuasive. Further, the Court lacks definitive evidence regarding the time Plaintiff spent on such communications. Thus, the Court finds a triable issue of material fact regarding the calculation of miscellaneous store communications.

> **e.      Whether the "brand ambassador" role should be considered exempt**

Defendants categorized as exempt the "brand ambassador" role, arguing the position fits comfortably within the definition of an exempt duty, given that the role required fostering relationships to promote business strategy. (Mot. 12:1–2.) Plaintiff challenges the exempt categorization. (Opp'n 9:9–17.)

Plaintiff acknowledges his responsibilities as brand ambassador and the amount of time he was expected to engage in that type of work, stating: "Q: Were you responsible for attending charity events, local events, mall initiatives, and things of that nature? A: Yes." (Ayala Dep. 80:16–19.) Followed by, "Q: How much time did you spend doing that? Is that a daily thing, a weekly thing? A: Weekly thing." (Ayala Dep. 80:20–22.) And finally, "Q: So in a typical week, how much time did you spend out in the community as a brand ambassador for the company? A: Me, personally? Q: Yes. A: Probably about an hour." (Ayala Dep. 81:21–82:1.)

Moreover, when explaining his job description as store manager, Plaintiff's first bullet point on his resume mentions the brand ambassador role; Plaintiff's resume states: "Brand Ambassador to a key location in the SD location overseeing development of business strategies to raise our customers' pool, expand store traffic and optimize profitability." (Ex. 2, 83, ECF No. 34-1.) As described by Plaintiff, the role focused on shaping business strategy and promoting the store's profitability. *See Ortiz v. Amazon.com*

*LLC*, 389 F. Supp. 3d 728, 735 (N.D. Cal. 2019) (relying on the plaintiff's admissions and duties as articulated on his resume to "support a conclusion that the position was managerial in nature").

With the support of Plaintiff's deposition testimony and the description of the role in his resume, the Court finds the role of brand ambassador to be directly and closely related to managerial duties. Accordingly, the Court considers Plaintiff's time spent as a brand ambassador to be managerial.

**f.      Whether the duty of "shopping a competitor" should be considered exempt**

Defendants also include as exempt Plaintiff's time spent assessing other mall businesses competitive with Coach, also known as "shopping a competitor." (Mot. 11:20–21.) Plaintiff argues that the Court should not consider communication with other businesses as exempt because Defendants did not specify whether the idea to develop relationships with other mall businesses originated with Plaintiff or Defendants. But an origination theory is not the test.

Plaintiff's deposition testimony reflects: "Q: Have you ever heard of the term 'shopping a competitor'? A: Yes. […] Q: Was that part of your responsibility as the store manager? A: Yes. Q: Is that something you did? A: Yes. […] Q: Can you give me some examples? A: You know, like, in our mall it would be, you know, it's another brand store. Let's say Actate, or anyone we felt that it was in competition." (Ayala Dep. 127:6–128:10.)

Defendants argue that, by assessing the strategy of other mall businesses, the purpose of this work was to gather information for business strategy. (Mot. 11:17–20; Ayala Dep. 128:1–5.) The Court agrees. The responsibility as store manager to shop a competitor is directly and closely related to Plaintiff's managerial responsibility to determine the techniques to be used. *See Leatherbury v. C & H Sugar Co.*, 911 F. Supp. 2d 872, 884 (N.D. Cal. 2012), aff'd, 607 F. App'x 676 (9th Cir. 2015) ("Although Leatherbury's conclusory declaration describes 70% of his work as "clerical," much of the shift reports, inventory reports, managerial meetings, checking over the plant, and troubleshooting

24cv1052

various problems were 'directly and closely' related to his management of the union employees, and thus are still considered exempt work.").

Accordingly, the Court considers Plaintiff's weekly assessment of competitive mall businesses a managerial duty.

To address Plaintiff's objections, Defendants recalculate. Regarding the communications with the district manager, Defendants calculate the low-end of 15 minutes for three days per week, for a sum of 45 minutes per week. Defendants also assume only five joint minutes for each store associate meeting, totaling 20 minutes per week. Further, Defendants eliminate time reviewing and monitoring store communications from the calculation. Moreover, Defendants at oral argument discount 45 minutes for rare on-duty meal breaks.

After making all these inferences in Plaintiff's favor, Defendants' recalculation comes out to a 40.75-hour week, with 21.35 hours spent on exempt duties, translating to 52% of the workweek. (Reply 4:11–15, ECF No. 38; ECF No. 48.) Accepting Plaintiff's admissions and construing reasonable inferences in Plaintiff's favor, Defendants have established as a matter of law that Plaintiff primarily engaged in exempt duties in a workweek. Accordingly, the Court grants Defendants motion for summary judgment on this element.

In conclusion, finding all six elements satisfied, the Court grants the partial motion for summary judgment in Defendants' favor, having shown entitlement to judgment as a matter of law on their affirmative defense.

**B.      Plaintiff's Claims Against All Tapestry's Brands Are Inappropriate**

Finally, the Court grants summary judgment as to all claims against Defendants Kate Spade, LLC and Stuart Weitzman IP, LLC. *See Stilwell v. Caesars Ent. Corp.*, 2023 WL 2634502, at *5 (D. Nev. Mar. 24, 2023), appeal dismissed, No. 23-15585, 2023 WL 7179476 (9th Cir. Oct. 18, 2023) (granting summary judgment as to claims against holding company that never employed plaintiff); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

24cv1052

Here, Plaintiff did not work for these named Defendants. Nor does Plaintiff make any claims against them. Instead, Plaintiff attempts to connect these Defendants to the lawsuit by stating Defendant Tapestry is the parent company of the brands Coach, Kate Spade, and Stuart Weitzman, and Plaintiff's performance reviews and paystubs feature only Tapestry's logo. In other words, because Tapestry's documents did not differentiate between the three companies, they are all liable. The Court finds this basis of connection weak.

Plaintiff also suggests similar policies and practices across the three brands, suggesting inclusion of Kate Spade and Stuart Weitzman's store managers in the class. (Opp'n 18:25–26.) But Defendant Tapestry, not its holding companies, employs potential class members. (Reply 10:7–9.) Further, the Court has not granted class certification, and the only question before the Court is whether Plaintiff asserts triable claims against Defendants. Accordingly, the Court grants summary judgment as to all claims against Defendants Kate Spade, LLC and Stuart Weitzman IP, LLC.

## III.    CONCLUSION

Upon reviewing the arguments, the Court **GRANTS** Defendants' motion for partial summary judgment. (ECF No. 34.)

The Court **GRANTS** summary judgment in Defendants' favor on their affirmative defense of executive exemption under Cal. Code Regs., tit. 8, § 11070.

The claim for reimbursement of business expenses, which Defendants did not move on, shall proceed to trial.

Finally, the Court **GRANTS** summary judgment in Defendants Kate Spade, LLC and Stuart Weitzman IP, LLC's favor as to all claims against these Defendants.

**IT IS SO ORDERED.**

**DATED: January 26, 2026**

_____
**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**

- 16 -

24cv1052